(Clark County, Ohio, Probate Court.)

J. H. BARKMAN, Administrator, v. GEO. W. HAIN.

---

(1). H. devised his farm to his wife for the period of 12 years, at the end of twelve years he directed, "All my real estate shall be sold by my executor, hereafter named at public sale, and the proceeds divided in three equal shares as follows: To my son George Hain, one share: To my daughter Caroline, one share, to the children of my daughter Elizabeth Ann Snyder, one share. Held that the fee to the real estate vested in the legatees at the death of the testator subject to be divested, upon the exercise of the power of sale resting in the executor.

(2). The interest of such legatee is subject to a judgment lien, the same as other real estate.

(3). If the lien exists at the time the executor sells said real estate, the lien is transferred from the land to the fund arising from such sale.

ROCKEL, J.

In 1884, Frederick Hain died seized of certain real estate which he disposed of by the following will:

"Item 1st. I give and devise the proceeds of my farm whereon I now live in section 31, town 3, and range 9, in Clark couny, Ohio, to my wife Isabelle Hain, in

lieu of her dower and yearly support for the period of twelve years after my decease, she to pay the annual taxes, and keep the fences thereon in good repair.

"Item 2nd. It is my will that my said wife shall have the use and occupancy of the dwelling house, stable and garden and about three-fourths acres of ground now occupied by me, during the said period of twelve years for a home for herself and my daughter Caroline.

"Item 3rd. It is my will that if my said wife, should die before the expiration of said twelve years, my daughter Caroline shall have provision made out of the proceeds of my said farm for her support until the expiration of said twelve years after my decease.

"Item 4th. It is my will that at the end of twelve years after my decease, all my real estate aforesaid, shall be sold by my executor, hereafter named at public sale, and the proceeds therof divided in three equal shares, as follows: To my son George Hain, one share, to my daughter Caroline, one share, and to the children of my daughter Elizabeth Ann Snyder, one share.

"Item 5th. I appoint my executor hereinafter named, as testamentary trustee of my daughter Caroline's estate.

"Item 6th. I give my personal property to my wife.

"Item 7th. It is my will that if my said wife is living at the end of twelve years aforesaid and at the sale of my real estate she shall have one-third of the proceeds of said sale and the two-thirds shall be divided among my children as aforesaid.

"Item 8th. I hereby nominate and appoint my trusted friend and neighbor, John Smith to be the executor of this my will, hereby revoking all former wills by me made."

It will be observed by this will the real estate was not to be sold until twelve years after the death of the testator. In the mean time one of the legatees, George W. Hain, suffered some judgments to be taken against him and also endeavored by quit claim deed, to sell his interest in the estate. These matters with the questionable rights existing under them, induced J. H. Barkman, the administrator with the will annexed, to commence an action in this court, to sell said real estate, making such alleged lien holders and purchasers, parties defendant. To this petition, R. C. Hover, one of the defendants, filed an answer and cross-petition in which he alleged that he had a judgment lien on the interest of Geo. W. Hain, and that thereafter said George W. Hain attempted for a colorable consideration, to sell to one Albert Clingman, his interest in said real estate, and that the same was done, to hinder and delay the creditors of the said Geeorge W. Hain.

Catherine Hain, one of the defendants, also filed an answer in which she said that she purchased by deed from Albert Clingman, the interest of said George W. Hain. She also at the same time filed a demurrer to the answer and cross-petition of R. C. Hoover. This raised the question whether the interest of Geo. W. Hain in the real estate in question under the will of said Frederic Hain, was such an interest that could be subject to a judgment lien.

Section 5374, Revised Statutes, provides that lands and tenements, including vested interests therein, shall be subject to execution. It will be necessary therefore to determine what kind of an interest Geo. W. Hain had in this real estate.

In the first place, it will be necessary to determine in whom the title vested from the death of the testator until the sale of the lands by the administrator with the will annexed.

For, if the legal title vested in the administrator, it will be admitted by all, that no lien could attach. In the American and English Ency. of Law, vol. 7, page 274, it is said: "In determining whether the executors, under the provisions of the will take a fee simple in trust to sell, or are invested merely with the naked power of disposition, the established distinction appears to be, that a devise of land to executors to sell, passes the interest in it. But a devise that executors shall sell the land, or that land shall be sold by executors, gives them but a naked power."

Applying this distinction, which I believe is born out by the Ohio decisions, to the provisions of the will under consideration, a mere naked power is held by the administrator.

In Elsner v. Fife, 32 Ohio St., 368, under a will which directed the land to be sold by executors, and the proceeds paid at a specified time, to certain legatees to whom he bequeathed his whole estate, it is said: "The theory upon which the plaintiffs frame their case involved the inquiry as to what became of the legal title to the land in controversy after the death of the testator, from whom both parties claim a title. The will makes no disposition of his real estate other than that it shall be sold by his executors, and that the proceeds shall be paid over to a trustee for the future benefit of his two daughters, who are made legatees of his entire estate. The executors were merely endued with power to sell the real estate and pay the money arising from the sale to the trustee, who was intrusted with the management, and to some extent, disposition of the funds. But the executors acquired no personal interest or special trust in the property, further than that connected with its sale and payment of the proceeds to the trustee named in the will.

Subject to this power the testator, so far as the executors were concerned, left the title as it stood at law, to pass to his

heirs, cumbered with the equity, created in behalf of his legatees."

The case of Dabney v. Manning, 3 Ohio St., 321, is directly applicable and decisive of the point. In that case power was given to the executors by the will to sell the land when, in their opinion, the sale could be made to good advantage, and pay the proceeds to his children when they became of age.

The court said, the title certainly descended to the heirs while the trust remained unexecuted, subject to be divested by the execution of the power. But the right of possession did not descend with the title: that pased with the will for the better enabling the executors to affect the objects of the testator.

So in this case, it is equally clear, that the title descended to the heirs at law of the testator subject to the execution of the power conferred by his will. The ex ecutors have no title, further than what was connected with the power conferred on them as executors, and when they ceased to be executors, the power terminated with their office, and any title they had dependent on the power, ended with it."

In the case of Lessee v. Leach, 17 Ohio St., 180, it was held that the title was in the executor, but this was because it was the intention of the testator to vest the property in the executor, and within the distinction laid down in the American and English Ency. of Law, the realty was devised to the executors to be sold. And in Boyd v. Talbert, 12 Ohio, 214, it was held that the will gave more than a naked power, and for that reason the title vested in the executor.

In other states the decision in Marsh v. Wheeler, 2nd Ed. Ch. (N. Y.), page 156), is pertinent as showing where the legal title vests in case under a will. In this case D.N., by his will, disposed of the residue of his estate as follows: "I will, order and direct all the rest, residue and remainder of my estate to be sold after the expiration of one year from my decease, and I hereby authorize and empower my executor to convey said rest and residue of my estate accordingly. And as to the said residue of my personal estate, and the proceeds of the sale of said rest, residue and remainder of my real estate, I give, devise and bequeath the same as follows:

"To each of my said daughters, (naming them) the sum of five hundred dollars, and the residue thereof to my sons, (naming them) to be equally divided between them share and share alike.' In passing upon this case the vice chancelor used this language. "The real estate is not devised to the executors, nor was the legal title vested in them by operation of law, and not being expressly devised to any one, it descended in the heirs at law, subject to the power of sale conferred upon the executor. The power here given

is a general one in trust, and is operative upon the grantees of the power. It operates as an incumbrance, and when it is executed, the same overreaches and divests the legal title and the estate in the heirs. The power could not be executed until after the expiration of one year from the testator's death; but the moment it was executed, the legal title became in the purchaser, and the purchase money became assets in the hands of the executors like the proceeds of the personal estate, and for the same general purpose."

This doctrine was further recognized in Holt v. Lamb 17 Ohio St. 374 in which it is held: "Where land is devised to a tenant for life with directions that at his death it be sold and the proceeds divided among his children, the children may elect at his death to take the land itself or have it sold for their benefit."

In Horst v. Dague, 34 Ohio St., 371, a testator provided that his real estate should be sold by his executors and the proceeds divided among his eight children. Before the execution of the power of sale, vested in the executor, by the will, one of the legatees gave a mortgage on his interest. After the mortgage was executed, a judgment was rendered against the legatee, and it was sought to give this subsequent judgment, priority over the mortgage on the ground that the legatee's interest was one in personal property, and not in real estate.

In deciding the case, the court directs attention to the fact that the judgment was acquired subsequent to the execution of the mortgage. It is also important in holding that, until the power of sale vested in the executor was exercised, the legatee's interest was real estate as distinguished from personal property.

On page 376, it is said: "The intention of the parties is sufficiently apparent. The legal title to the property mortgaged at the date of the mortgage, was in Simon Rohrer, (the legatee under the will). It was therefore quite natural to regard his interest as consisting of real as distinguished from personal estate, although there was an unexecuted power of sale outstanding, the execution of which would divest his title and pass it to the purchaser under the sale made by the executor.

"But whether the thing mortgaged was called land or money, or however it was described, is quite immaterial in a court of equity, where the substance and not the form of the transaction is regarded. The mortgagor intended his mortgage to cover his interest in the property whether classed as real or personal estate. The mortgage therefore operated as an equitable assignment of Simon Rohrer's interest in the proceeds of the sale of real estate as security for the payment of the mortgage debt. This being the substance and within the contemplation of the party, the essential character of the transaction,

equity will carry the same into effect.

"Simon Rohrer neither questions its character, nor disputes its validity. Nor could he do so successfully if he were so inclined.

"And as the defendant Dague had no lien upon the fund sought to be reached when the mortgage was executed, his rights at most are no better or higher than those of Simon Rohrer."

An inference might be gathered from this opinion that if the judgment of Dague would have been rendered before the execution of the mortgage, that his lien or claim upon the fund would have been superior to that of the mortgage creditor. And if so, would have been decisive of the case under consideration.

In Smith v. Anderson 31 Ohio St., 144, a creditor attached the interest of a devisee in lands under a will, giving an executor the power to sell and divide the proceeds. After the attachment was made, the executor sold the land, which the court held he had a right to do, free from the claim of the attaching creditor.

Whether a lien on the fund was created, is suggested, but not decided. On page 146, it is said: "The position assumed by counsel for plaintiff is, that the executor having but a naked power of sale, the legal title to the land of which the testator died seized vested and took effect in the devisees under the will; and that inasmuch as the statute, upon the proper showing, authorizes the attachment of whatever interest a debtor may have or own in any property not exempt form execution, the lien acquired by the levy of the attachment in the action against William Anderson, was not defeated by the subsequent sale of the estate by the executor.

"Granting that the devisees took the legal title, they received it subject to an outstanding power of sale in the executor, the execution of which would at once divest them of their title and pass it to the purchaser.

"The instrument creating their estate, lodged in the executor power to dispose of the fee. Without an election to take the land instead of the proceeds to be derived from its sale, no incumbrance the devisees might see fit to place upon it, would affect, much less defeat, the right and power of the executor to convey away the title.

"The lien of a judgment against a devisee could operate no further than to bind the interest received. It could not impair the right of the executor to convey the premises in execution of the power conferred by the testator. A creditor by seizing the property of his debtor by process of law ordinarily acquires no greater interest than his debtor possesses. This is the general rule.

"The estate the devisees took by the bequest was not an absolute estate in the full sense of that term. One of the principal incidents of ownership, the power to sell and convey, was vested in another. Upon the execution of such power, the title of the devisees became, ipso facto, extinguished, and the funds raising from the sale became a substitute for the land conveyed. If the estate had been disposed of by the will; if the decedent had merely clothed his executor with a power to sell and convey, leaving the distribution of the estate to the law of descents, and the attachment had been levied on the interest of William Anderson, descended to him as heir. before the power of sale had been executed, the case, in its legal aspect, would not be changed. In such case, the legal title would have gone to the heirs subject to the power in the executor to divest it, by a sale and conveyance of the estate to which the power attached. And a seizure of the interest of the heir, by levy of execution or attachment, would have no possible effect on the executor's right to convey. Allison v. Wilson's Executors, 13 Serg & Rawle. 330; 4 Har. (Del) 343.

"Whether the attachment in the present case gave or created an equity in the fund arising from the sale by the executor, is a question not before us. It is, however, claimed that where a mere power of sale is given to an executor, trustee, or where he is imperatively directed to sell, and to distribute the avails of the sale among ascertained beneficiaries, they may defeat the right to execute the power, or extinguish it by electing to take the land instead of the proceeds arising from the sale. Holt v. Lamb. 17 Ohio St., 375. Ree v. Underhill, 12 Barb. 113; 1 Leading Cases in Eq. pt. 11, 1168. Admitting the law to be as thus claimed, it does not affect the case under discussion. Here there was no election declared. It is the election, and not the mere right to make it, that changes the character of the estate. 1 Story's Eq. Jur., section 793."

The opinion just quoted seems to go on the theory that the devisee had an interest under the will which might have been subjected to a judgment lien. The recent case of Moore v. Herancourt, 10 C. C. 420, is important as holding that where the title vests in a person, the existence of a power in another to divest him of that title, will not prevent a lien from attaching, and while not necessary to the decision of the case, the judge in the opinion says, that the lien will be transfered from the lien to the fund. On page 423 it is said: "It is the claim of the plaintiff that the interest in the real estate devised by the will of Mr. Herancourt was a vested interest, and consequently that on the rendition of the judgment in favor of Moore v. E. S. Herancourt, it became a lien on all of his interest in the real estate devised to him by his father.

"We are of the opinion that the interest

[COPYRIGHT, 1898, BY CARL G. JAHN.]

so devised was a vested interest; but it seems clear to us that any interest he may have taken in the matter was subjected to be divested either by the exercise of the power to sell said real estate which was conferred by the will upon Barbara Herancourt or on the contigency that in the event of the death of any one of the devisees, without issue of his body, then his or her share should go to the surviving legatees or devisees.

"That such was the case in the event that the widow should exercise the power of sale given to her, and that even when a judgment had been recovered against one of the devisees, prior to the conveyance by her, that the interest of the devisee would be conveyed free of the judgment lien, we think is held in Smith v. Anderson 31 Ohio St. 144, and in such case the interest of the devisee would be in the proceeds of the sale. The obtaining of the judgment could in no way interfere."

As to how such lien may be protected or enforced, the suggestions on page 426 are pertinent to the question under consideration. Here it i s said: "We suppose, then, that while it may be within the power of the court in a case of this kind, to order the sale of whatever interest Herancourt may have in this land, subject to the life estate of his mother, her power to sell the same, and to the advancements already made to him, and to the contingency of his having only a life estate therein, yet it would seem a vain and useless thing to do in this case, as it is not likely that any one would purchase so uncertain an interest. Or we suppose this court might by its decree, place the plaintiff, in so far as this judgment is concerned, in the shoes of Herancourt, and by decree provide that on the final settlement, of the estate, and the ascertaining of the amount that would be coming to Herancourt, that it should not be paid to him, but that the income thereon, for his life, he paid to the plaintiff on account of his judgment, and if on his death, it appears that Herancourt was the absolute owner of such share, that so much thereof as may be necessary, be applied to the satisfaction of such judgment.

We express this view for the information of counsel, without knowing the amount of the estate, or whether any such relief would be deemed of any value.

These decisions are sufficient to warrant me in holding that the interest of George Hain, under the will of his father, vested at the time of the death of his father, and that such interest was subject to a judgment lien same as any real estate. If the executor exercised the power vested in him under the will and sold the real estate, the lien would be transferred to the fund from such sale.

It is admitted that the judgment is not dormant, and that execution has been issued and levy made.

It will therefore be held that the judgment lien is valid, and an order will be made directing the executor to apply the proceeds in his hands belonging to Geo. W. Hain, upon the judgment, and the remainder to the person to whom it has been conveyed by said Hain.

J. A.Kerr for Hain.
Oscar T. Martin for Hoover.